# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CARA OETJENS | CIVIL ACTION NO. |
| VERSUS | 17-146-SDD-RLB |
| BJ's RESTAURANT OPERATIONS COMPANY and BJ's RESTAURANT, INC. | |

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Plaintiff, Cara Oetjens ("Plaintiff"). Defendant, BJ's Restaurant Operations Company and BJ's Restaurant, Inc. ("Defendant") has filed an *Opposition*[2] to this motion, to which Plaintiff filed a *Reply*.[3] For the following reasons, the Court finds that Plaintiff's motion should be denied.

## I.  FACTUAL BACKGROUND

On April 24, 2016, Plaintiff visited BJ's Restaurant in Baton Rouge, Louisiana with her father and her two children.[4] While waiting for her party's entrees to be delivered to their table,[5] she "excused herself to the restroom to change her minor child's diaper."[6] Plaintiff remained in the restroom for "maybe five minutes or less,"[7] then started walking back to her table, at which point she "suddenly, unexpectedly and without warning

---

[1] Rec. Doc. No. 18.
[2] Rec. Doc. No. 19.
[3] Rec. Doc. No. 21.
[4] Rec. Doc. No. 1, p. 2.
[5] Rec. Doc. No. 18-4, p. 8, lines 18-25.
[6] Rec. Doc. No. 18, p. 1.
[7] Rec. Doc. No. 18-4, p. 6, line 19.
48629

slipped"[8] on a liquid that was allegedly "left on the floor from the spills of previous patrons or the BJ's wait staff."[9] Plaintiff did not see any liquid on the floor before she fell,[10] but when she got up, she noticed that her "shorts were wet"[11] and that there was a "trail of wetness"[12] on the floor near her table. Plaintiff's father, who was seated at the table during these events, later recalled seeing a busboy cleaning a nearby table in a "sloppily manner [sic]."[13] Although the "floor area was not visible from [his] perspective,"[14] Plaintiff's father did recall seeing "a liquid substance"[15] that was "running off the table or off of something onto the floor"[16] in the area where the busboy was cleaning. Plaintiff's father assessed the cause of the wet floor as follows: "what happened is that the busboy had a tub . . .that he was loading all of the dirty dishes into. . . he was either spilling out of that or there was a leak in that."[17]

After Plaintiff's fall, a waitress "saw her visibly upset and asked if everything was okay."[18] A manager came to the table and "apologized for what had happened to [Plaintiff] and said that it appeared that something happened when they were cleaning the table."[19] Then, BJ's staff "mopped [the floor] and put out a wet floor sign."[20] Plaintiff's father "asked

---

[8] Rec. Doc. No. 1, p. 2.
[9] Rec. Doc. No. 1, p. 2.
[10] Rec. Doc. No. 18-3, p. 2, lines 3-5.
[11] Rec. Doc. No. 18-3, p. 2, line 25.
[12] *Id.* at line 9.
[13] Rec. Doc. No. 18-4, p. 2, line 9.
[14] Rec. Doc. No. 18-4, p. 3, lines 20-21.
[15] *Id.* at line 6.
[16] *Id.* at lines 2-3.
[17] Rec. Doc. No. 18-4, p. 5.
[18] Rec. Doc. No. 18-4, p. 7, lines 2-3.
[19] *Id.* at lines 20-25.
[20] *Id.* at pp. 7-8, lines 25 and 1.
48629

[Plaintiff] if she wanted to go."[21] Because she "didn't want to upset her kids,"[22] Plaintiff's party stayed to eat the entrees that were delivered "shortly after"[23] her fall.

Plaintiff subsequently brought the instant suit, praying for damages for her "permanent, painful and disabling"[24] physical injuries and "permanent, severe and disabling psychological injuries,"[25] which she alleges were caused by the negligence of BJ's Restaurant. Now, Plaintiff contends that she is entitled to summary judgment because "[t]he evidence provided inarguably demonstrates that BJ's created the hazard which caused [Plaintiff] to fall."[26] Defendant counters that there are significant issues of fact regarding whether "BJ's created the hazardous condition"[27] and whether "BJ's failed to exercise reasonable care."[28] Thus, Defendant argues, "a jury is entitled to evaluate the credibility"[29] of Plaintiff's evidence, and summary judgment is inappropriate.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing

---

[21] *Id.* at p. 8, line 16.
[22] *Id.* at line 17.
[23] *Id.* at lines 18-19.
[24] Rec. Doc. No. 1, p. 3.
[25] *Id.* at p. 4.
[26] Rec. Doc. No. 18-1, p. 5.
[27] Rec. Doc. No. 19, p. 9.
[28] *Id.*
[29] *Id.*
[30] Fed. R. Civ. P. 56(a).
48629

the evidence."[31] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[32] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[33] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[34]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[35] All reasonable factual inferences are drawn in favor of the nonmoving party.[36] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[37] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his

---

[31] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[32] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[33] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[34] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[35] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[36] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[37] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

allegations … to get to a jury without any "significant probative evidence tending to support the complaint.""[38]

## B. The Louisiana Merchant Liability Statute – La. R.S. 9:2800.6[39]

Louisiana Revised Statute 9:2800.6 sets forth the burden of proof in claims against merchants, such as the Defendant, and provides the following in pertinent part:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

"Constructive notice," as defined in La. R.S. 9:2800.6(C)(1), means that "the condition existed for such a period of time that it would have been discovered had the

---

[38] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[39] Louisiana law on merchant liability governs Plaintiff's claims because this matter is before the Court on the basis of diversity jurisdiction.
48629

merchant exercised reasonable care." The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care, should have known of the condition.[40]

Where the cause and time of a spill are unknown in a slip and fall case arising on a merchant's premises, the factfinder is required to draw inferences from various factors pertaining to the spill and the merchant's actions in an effort at determining whether the merchant's negligence is the "most plausible explanation for the accident."[41] Since fault is not based on strict liability, a spill that is not shown to be caused by the storekeeper, but more likely was caused by another patron, does not alone create liability.[42] The plaintiff must also prove that the defendant breached the duty of reasonable inspection and care of the premises.[43]

To prove that the defendant breached that duty, a plaintiff must make a "positive showing" that "the [damage-causing] condition existed for such a period of time" before the fall that the merchant would have discovered its existence through the exercise of ordinary care.[44] Thus, a claimant who simply shows that the condition existed, without an additional showing that the condition existed for "some time" prior to the fall, has failed to carry the burden of proving "constructive notice" as mandated by La. R.S. 9:2800.6.[45] Where a plaintiff does not present any evidence as to how long the damage-causing

---

[40] La. R.S. 9:2800.6(C)(1).
[41] *Tanner v. Brookshire Grocery Co.*, 29,276 (La.App. 2 Cir. 4/2/97), 691 So.2d 871, 873.
[42] *Id.*
[43] *Id.*
[44] *White v. Wal–Mart Stores, Inc.*, 97–C–0393 (La.9/9/97), 699 So.2d 1081, 1084–1085.
[45] *Id.* at 1083.

condition existed prior to the fall, courts have routinely found that the plaintiff has failed to carry his/her burden of proof.[46] In addition, the merchant does not have to disprove its culpability by coming forward with positive evidence of the absence of a spill.[47]

**C. Analysis**

1. <u>Whether BJ's "Created" the Damage-Causing Condition</u>

To prevail under La. R.S. 9:2800.6, Plaintiff bears the burden of proving that "[t]he merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence."[48] Plaintiff claims that she has met that burden because her evidence "inarguably demonstrates"[49] that BJ's Restaurant staff created the hazard. Yet, in her own *Complaint*, Plaintiff raises the possibility that BJ's staff did not create the hazard, stating that the liquid was on the floor due to "the spills of previous patrons *or* the BJ's wait staff."[50] When asked in her deposition whether she knew "how the substance got on the floor," Plaintiff answered, "no."[51]

---

[46] *See, O'Brien v. Wal–Mart Stores, Inc.*, 31,032 (La.App. 2nd Cir.10/28/98), 720 So.2d 1263 (The plaintiff failed to present any evidence to establish that the oil upon which she slipped was on the floor for any length of time and therefore did not establish constructive notice on the part of the defendant/merchant); *Kennedy v. Wal–Mart Stores, Inc.*, 98–1939 (La.4/13/99), 733 So.2d 1188 (While the plaintiff produced evidence showing that the general area where he fell was within view of a customer service podium and that it was raining on the evening when he fell, he failed to present any evidence as to the length of time the puddle was on the floor before his accident and therefore failed to meet his burden of proving Wal–Mart's constructive knowledge of the condition); *Babin v. Winn Dixie of Louisiana, Inc.*, 2000–0078 (La.6/30/00), 764 So.2d 37 (Where the plaintiff admitted in his deposition that he did not know how the toothpick boxes upon which he slipped arrived on the floor and that he did not know how long they had been on the floor prior to his fall, the Louisiana Supreme Court found that the plaintiff failed to produce the factual support necessary to establish that he would be able to satisfy his evidentiary burden of proof at trial and therefore found that summary judgment was appropriate).
[47] *Id.* at 1086.
[48] La. R.S. 9:2800(B)(2).
[49] Rec. Doc. No. 18-1, p. 5.
[50] Rec. Doc. No. 1, p. 2 (emphasis added).
[51] Rec. Doc. No. 19-2, p. 13.

48629

Plaintiff relies on the testimony of her father, Chris Oetjens, to establish that the actions of a BJ's busboy created the wet floor conditions. In his deposition, Chris Oetjens testified that he saw the busboy cleaning in a "sloppily manner [sic]"[52] and saw "fluids"[53] that were "running off the table or off of something onto the floor."[54] This testimony does potentially give rise to an inference that BJ's staff created the hazard. However, Chris Oetjens did not directly observe the busboy creating the wet floor conditions. He did not see the busboy knock over a glass or spill a drink,[55] and, although he testified that the busboy "was either spilling out of [his dish tub] or there was a leak in [the tub],"[56] he admitted that he did not see anything on the floor before Plaintiff fell,[57] and in fact "didn't see the floor area"[58] at all before her fall, because "it was obscured by tables."[59] Hence, Plaintiff's conclusion that BJ's staff created the hazard is supported only by her father's testimony, which, especially when viewed in the light most favorable to BJ's, merely alleges circumstances under which BJ's staff *could* have created the hazard.

In *Mohammad v. P.F. Chang's China Bistro*,[60] the United States Court of Appeals for the Fifth Circuit found that the plaintiffs in a slip-and-fall action under La. R.S. 9:2800 had not met their burden where they relied "solely upon mere assertions. . .that spills in the kitchen *could* be tracked into the hallway as 'evidence' of actual knowledge on the part of P.F. Chang's that it *was* tracked into the hallway. . ."[61] Likewise, in the instant case,

---

[52] Rec. Doc. No. 18-4, p. 2, line 9.
[53] *Id.* at line 22.
[54] *Id.* at p. 3, lines 2-3.
[55] Rec. Doc. No. 18-4, p. 2-3.
[56] Rec. Doc. No. 18-4, p. 5, lines 21-22.
[57] Rec. Doc. No. 18-4, p. 2, lines 1-3.
[58] Rec. Doc. No. 18-4, p. 2, line 4.
[59] Rec. Doc. No. 18-4, p. 2, line 5.
[60] 548 F.App'x. 236 (5th Cir. 2013).
[61] *Id.* at 238-239.

48629

Plaintiff cannot meet her burden of proof by asserting that there was a busboy in the vicinity who *could* have created the wet floor condition that led to Plaintiff's fall.

Similarly, in *Bagley v. Albertson's*,[62] the Fifth Circuit held that a plaintiff was not entitled to summary judgment on the issue of whether the merchant created the hazard where his evidence was limited to speculation regarding the source of a spill. The court explained that the plaintiff

> attempts to rely on the testimony of a single employee who stated, "I was thinking it was like chicken blood or meat blood that just a customer stopped for a second and it was dripping out of the bottom of their buggy." This statement is speculative at best, and even if it were sufficient evidence for a jury to find that the liquid came from a cart, it is yet another step to show Albertson's responsibility for the leak. No reasonable jury could find that Bagley has presented sufficient evidence to demonstrate that Albertson's created a leak.[63]

The same is true here, where Plaintiff offers the testimony of her father to prove that he saw liquids running to the floor in the restaurant. Even if that testimony (which is cast into doubt by the deponent's subsequent assertion that he could not see the floor) were accepted as true, it still requires "yet another step to show" that BJ's Restaurant's – not another patron -- was responsible for that liquid's presence on the floor.

Plaintiff further relies on the statement of Gary Williams, Jr., the BJ's senior manager on duty at the time of her fall, as evidence that BJ's created the wet floor conditions. In his deposition, Plaintiff's father recalled that the manager said, "it appeared that something happened when they were cleaning the table."[64] Although this assessment does tend to suggest that BJ's staff created the spill, the manager's statement is called

---

[62] 492 F.3d 328 (5th Cir. 2007).
[63] *Id.* at 330.
[64] Rec. Doc. No. 19-1, p. 6.
48629

into question by other evidence in the record, including Plaintiff's own assertion in her *Complaint* that the floor was wet due to "spills of previous patrons or the BJ's wait staff."[65] The manager also reported that neither he nor any other BJ's employee witnessed Plaintiff's fall.[66] He recalled giving Plaintiff and her party a discount on their meal to show that the staff "appreciate[d] [them] taking the time to talk to us and telling us what happened."[67] So, the knowledge that BJ's staff regarding the floor conditions was based on Plaintiff's "telling [them] what happened,"[68] because they themselves did not witness the accident. Thus, the only evidence that the BJ's busboy created the spill is the unsubstantiated assertion of Plaintiff's father, who, by his own admission, could not see the floor.

Overall, because Plaintiff's pleadings and evidence leave open the possibility that someone other than BJ's staff created the wet floor, the Court finds that there remain genuine issues of material fact as to whether, as required by the statute, "the merchant created. . .the condition which caused the damage."[69]

   2. <u>Whether BJ's Had "Actual or Constructive Notice"</u>

Plaintiff could still prevail by proving the second prong of La. R.S. 9:2800(B)(2), which requires that the merchant had "actual or constructive notice of the condition which caused the damage, prior to the occurrence."[70] To prove such notice, Plaintiff relies on her conclusory allegation that the BJ's busboy created the spill, stating, "One has to

---

[65] Rec. Doc. No. 1, p. 2.
[66] Rec. Doc. No. 19-3, p. 10.
[67] Rec. Doc. No. 19-3, p. 11.
[68] *Id.*
[69] La. R.S. 9:2800(B)(2).
[70] La. R.S. 9:2800(B)(2).
48629

wonder why the employee did not [clean up the spill] when he spilled the liquids."[71] The disputed assertion that the busboy created the spill does not prove actual or constructive notice. In fact, the earliest evidence in the record of notice on the part of BJ's staff is the senior manager's recollection that he found "drops"[72] on the floor *after* Plaintiff's fall. This is insufficient to meet Plaintiff's burden of proof under La. R.S. 9:2800.6, which requires proof of actual or constructive notice *before* the damage-causing occurrence.

Plaintiff further asserts that the busboy was unreasonable in not immediately cleaning up the spill because it was small enough to be cleaned up with a towel.[73] This conjecture is somewhat perplexing, since asserting that the spill was small seemingly suggests that the busboy would be *less* likely to notice it because it covered less area on the dining room floor. Moreover, Plaintiff's argument is fraught with disputed factual issues. In his deposition, the BJ's senior manager testified that the spill was "small enough to be cleaned with a towel"[74] and recalls that the busboy in fact "used a towel to wipe it up."[75] Yet, in Plaintiff's deposition, she testified that she "recall[s] seeing that one of the employees was cleaning it with a mop – with a mop and bucket."[76] Plaintiff's conflicting evidence thus creates a disputed factual issue regarding the size of the spill and BJ's cleanup measures, on top of the already-disputed issue of notice.

While Louisiana law does provide that constructive notice can be inferred upon a showing that "the damage-causing condition existed for some period of time. . .sufficient

---

[71] Rec. Doc. No. 18-1, p. 5.
[72] Rec. Doc. No. 18-5, p. 3.
[73] Rec. Doc. No. 18-1, p. 5.
[74] Rec. Doc. No. 18-1, p. 5.
[75] Rec. Doc. No. 19-3, p. 10.
[76] Rec. Doc. No. 19-2, p. 13.
48629

to place the merchant defendant on notice of its existence,"[77] Plaintiff fails to make a showing regarding how long the wet floor conditions existed. In her *Complaint*, she alleges conclusively that the "dangerous liquid remained on the floor for such a period of time that the employees of the BJ's restaurant knew, or should have known, of its presence on the floor."[78] Yet, Plaintiff's father testified that he is "not sure with respect to time"[79] and, when asked how long the substance was on the floor, could only state that "it would have been for a fair while."[80]

In *Tate v. Outback Steakhouse of Florida*,[81] the Louisiana Court of Appeal for the First Circuit held that

> while there is no bright line time period required, when a claimant is relying upon constructive notice. . .the claimant must come forward with positive evidence showing that the damage-causing condition existed for some period of time. . .the premises liability statute does not allow for the inference of constructive notice absent some showing of this temporal element.[82]

The same showing is required here, and Plaintiff has presented no "positive evidence" of how long the wet floor conditions existed. Overall, the competent summary judgment evidence establishes that neither Plaintiff nor anyone in her party saw any water, liquid, or other foreign substance on the floor before Plaintiff's fall, and neither Plaintiff nor her father can say for sure whether the Defendant's employees caused the allegedly unsafe condition on the floor. Moreover, Plaintiff has established no concrete

---

[77] 2016-0093 (La.App. 1 Cir. 9/16/16), 203 So.3d 1075, 1079.
[78] Rec. Doc. No. 1, p. 2.
[79] Rec. Doc. No. 18-4,
[80] Rec. Doc. No. 18-4, p. 7.
[81] 2016-0093 (La.App. 1 Cir. 9/16/16), 203 So.3d 1075 (2016).
[82] *Id.* at 1079.

48629

timeline for how long the condition existed before she slipped, and she has provided no direct evidence that any employee of the Defendant knew of the condition prior to her fall. Because Plaintiff is unable to produce the necessary factual support to satisfy her burden of proving that BJ's either created the wet floor or had actual or constructive notice of its condition, as required by La. R.S. 9:2800.6 and related jurisprudence, her *Motion for Summary Judgment* must be denied.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's *Motion for Summary Judgment*[83] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana the 5th day of November, 2018.

*Shelly D. Dick*

**SHELLY D. DICK, CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[83] Rec. Doc. No. 18.

48629